Your Honors, Anthony Bornstein for the petitioner appellant in this federal habeas corpus case. Your Honors, this case, as in the previous one, presents the issues whether there's a protected liberty interest and whether the board's decision contravene protections under the due process clause in making the identical determination on the likelihood of rehabilitation. One of the threshold issues in this case is whether or not the claim is properly before the court because of an alleged failure to satisfy exhaustion requirements and should the court wish I could address that particular issue at the outset. Our argument is set forth in detail in our reply brief. The district court bypassed it and went directly to the merits. But in essence, the review system that the court is a little unique. Pardon me? It is a little unique. It is, it is. Where a member of the board is designated as the appellate review, essentially administrative appellate review. Yes. The designee in this case was the chairperson of the board who then reviewed the decision. And the bias issue is central to the inadequacy inherent in such a system of so-called review. But also, if one just looks to the form at ER 92, it's just not a realistic means for facilitating or enabling a constitutional adjudication. It's a form the prisoner fills out that says, why do you think we made the wrong call? The prisoner fills it out, and then the board comes up with reasons that do not speak to any kind of constitutional analysis, but simply say the board's decision is not in violation of statutes. Although under the regs or the statute, I'm not sure if it's regs or statutes, the reviewer has the authority to address constitutional and statutory claims. And the question then becomes whether a state can require constitutional review as part of an executive branch decision. And if it can, does the particular system that the board itself then devises, in which the courts then review, pass muster? And because of the bias inherent in that review, the conflicting roles that the board has in its executive branch decision and function, rather, to protect public safety, it cannot then review its identical decision and its own previous rulings. Courts can't do that. Federal courts can't do that. State courts can't do that. And certainly an executive branch official cannot do that either. And one last point on that before I turn to the merits, this is the reason for the preservation requirement is to develop a record and to enable reviewers to come to the task with adequate information and with a chance to review the claim. And here it is a purely legal claim. It does not necessitate any particular evidence beyond any evidence beyond that which was presented to the administrative tribunal. And, in fact, co-counsel has made a substantial argument that the record in this case amply supports their position and the board's decision, so there was no impairment of the board's ability to or the court's ability on review to rule on the claim. Well, while I think about procedure requirements, I assume you are requesting the issuance of a certificate of appealability in this case? Yes, Your Honor. I mean, one hasn't been obtained before because before Hayward it hadn't believed to be required. As part of its adjudication of this case, we would very definitely make that request, Your Honor. This case was decided at the district court level in that post-Rosas v. Nielsen era, and then that, of course, changed with the recent en banc decision in Hayward. With respect to the merits, again, similar to the argument that we put forward in the Miller case, in light of the institutional achievements and advance in maturity that Mr. Fisher displayed at his rehabilitation hearing compelled a finding that the he had established by the requisite burden of proof that he was likely, likely to be rehabilitated in a reasonable period of time. Again, the board on a separate criteria that it itself developed, which was the lack of sufficient insight into the reason he committed the crime. That was explored at depth, and Mr. Fisher did not avoid the court's question or the board's questions, but in fact grappled with that. And yet the board found that he just sufficiently did not have insight, that he was therefore not likely to be rehabilitated. And I would submit that the – that that kind of criteria can always be kept, you know, a yard beyond what the prisoner comes forward with. He came forward with what he could in terms of what he had done in prison after being sentenced for his crime. How many years had he been in prison before they had the hearing here? This was a 1985 offense, and so he had been in prison 17 years. He was 21 at the time that he committed his crime. In fact, he made that very point when asked, like, well, how have you matured? He said, well, now, you know, that was 17 years ago. I'm now 38 years old, and I've learned a lot. And the most important thing that he stated that he learned when questioned by the board was how violence isn't the answer, how he's now been able to stay violent and infraction-free. There was only one infraction, a technical one, nine years before he appeared before the board at this hearing, where he had a platonic relationship with someone who was on the staff. And that was it in terms of his infractions in this entire 17-year period of incarceration. And so those kind of solid achievements that Mr. Miller had collectively show that he met his burden of proof. Mr. Bornstein, I acknowledge that it's kind of a qualitative analysis of the answers, but I'm not so sure it's positive to me that the board, you know, wouldn't be underwhelmed by saying, well, time has passed, and I now know violence isn't the answer, that that's enough to signal that he's rehabilitated himself and ready to go out despite this crime. Well, and I agree that one answer isn't going to be enough, but as in Pirtle, the board looks to the totality of the record before the board. And with the institutional history that he had achieved and the recommendations and positive reports from prison staff themselves, collectively he had satisfied this, again, this preponderance standard, which doesn't require him to show it by a clear and convincing standard or anything higher than that, but does put the burden on him. And the board cites in particular the failure on his part to submit any evidence of his current psychological condition. That would concern me if I'm a member of the board. If the prisoner doesn't tell us what's being said about him at the time, why isn't that by itself enough to say, hey, you haven't carried your burden because you're not willing to tell us what the shrink says about you now? Well, I think that very question underscores the problem here and in the board's decisions in these two cases, if I may. There was a psychological report in the first case in which the psychologist's report was, on balance, very favorable. And the board essentially disregarded it because of another factor that it decided justified keeping the prisoner in and that he hadn't met his burden. So despite the fact that there is a psychological in that case, which doesn't seem to matter, now there's an absence of a psychological evaluation and a psychological report, and that becomes very significant. So it's this shifting ad hoc decision that the board appears to actually make in deciding it rather than under the specific statutory criteria, whether he, on a preponderance of the evidence. I don't see that as shifting at all. Sometimes there is evidence that's compelling. Sometimes there's not. The fact that there's a psychological report may not mean that that report overwhelms what else is in the record. The fact that there's no psychological report would concern me a whole lot. There's somebody who committed a crime that is very difficult to understand. He reflects little understanding of it. The board's report is pretty blunt about, look, you brutally raped and murdered a woman that you barely knew. How do you explain this, and how do we not be concerned that you will do something bizarre like that again in the future if we let you go? And if the response is, I've adhered to prison regulations because I recognize the enormous force of the state around me, that's not a real good answer of how he's going to behave once he's out. If he doesn't submit any psychological report, I don't find it real hard to understand why the board doesn't think that the prisoner is carried by a preponderance of the evidence, the burden of showing he's rehabilitated or is likely to be rehabilitated in the near term. The failure to submit a psychological report strikes me as being pretty telling. And the fact that in another case the psychological report may not be enough in the board's mind to overweigh or outweigh the other evidence, I really don't see the damned if I do, damned if I don't situation you tried to set up for us. Well, I would agree it's a totality picture, and the prisoner has to demonstrate through all of the circumstances surrounding their incarceration and their ability to conform in the future whether or not they've met the standard. And here, because of the particular statute at issue, which is not standardless, which is forward-looking, and which balances all these collective criteria, he met his burden of showing that in a future time, reasonable time, he's likely to be rehabilitated. And the work history and the like plays into that, And the board can take into account whether he's likely to gain further insight as he gets closer to the release date. And based on what the distance he had come, that was the only reasonable conclusion in this case. Thank you. Thank you. We'll hear from the State. Good morning, and may it please the Court. Counsel Cecil Renish-Smith on behalf of the Oregon Board of Parole. And the discussion that the Court has been having this morning about the evidentiary standards is fascinating, but I do think we do need to step back a bit, as Mr. Bornstein acknowledged in opening, that perhaps this particular case is not the one where the Court needs to reach that issue or determine that issue because, as a matter of Oregon law, Petitioner did not fairly present his federal due process claims to the Oregon courts. And because of that, he is procedurally defaulted from presenting them in a federal habeas action. And I understand that Petitioner's position is that he did not have to raise the issue in his request for administrative review because it would have been futile. That futility, there is no futility. It doesn't strike me as very meaningful. It's a very meaningful review system. And I understand that you found it to be unique. I was a district court judge for six years. And when I got to the circuit, I was prohibited from sitting on any panel where my decisions were on review. Right. And that prohibition was a result of the rules and statutes directed at what? Probably a due process issue there as well. Maybe. One could say that my decision that I rendered as a district court judge, that I would be hard pressed, you know, somewhat fairly – a good argument made that I would be somewhat biased in the outcome. Except there normally is a presumption that the adjudicator is unbiased until proven biased. But in the other... You don't think I would have an interest in upholding my own decisions? Possibly. But also, as a district judge, we have to assume that you would look at the law and apply the law properly. But now I'm an appellate court judge. We're sitting on a panel that's reviewing my own decision. How could that possibly be fair? I mean, would you, as a litigant, would you? Yeah. I'm a district court judge, and I ruled against you. And lo and behold, you come into the Ninth Circuit, and there I am, sitting on the panel that's reviewing my decision. Do I rule against you? As a litigant, I would be dismayed. You would be shot. I would be filing... He knows his shortcomings more than anybody else, so who knows? Of course, I could be fair. I'm going to be fair, but my goodness. Yes, I would be complaining. I would be dismayed. I don't find that to be a very... I don't know that we're going to have to get to this issue, but I don't find that a very... I don't speak for my colleagues, but I don't find that to be a very strong argument. Right. Well, and I guess the few things that I'd like to point out is that administrative agency review of its own decisions is not unique in Oregon law, and that is... Do we have any indication that the Oregon courts made the finding that you're suggesting that we should make, that is, that the claim was procedurally defaulted? Well, what happened in the Oregon courts is the prisoner had... the Petitioner had his hearing, and after that, he submitted his administrative review request. And the form for that actually has a point where the prisoner... the Petitioner can say the board action is in violation of statutes and or the Constitution because fill in the blank. On that form, that is where he could have put it violated my Federal due process rights. But that's not what he took to court. You're speaking now of the internal process, right? Well, this is how it went up to the court of appeals. Well, what is it he submitted to the court of appeals? To the court of appeals, he raised a number of claims, among them the Federal due process claim. And did the court of appeals say anything that suggested that the claim he was trying to raise, the Federal constitutional claim, was being rejected on procedural grounds? The court of appeals affirmed without a written opinion. Exactly like happened in Miller. Correct. So it's hard for me to discern from that. I mean, it took me a while to figure out just what the procedural default was. I came finally to understand it, and it turns out to be the same thing you're telling us. But we don't have anything from the Oregon courts that tell us that they're responding to this issue any differently than they responded to the issue in Miller because they're giving exactly the same kind of denial affirmed without opinion. They didn't dismiss. I mean, in some states, you look to find out if they dismiss because we don't have anything from the Oregon courts that tells us that they're responding to this issue      It's a terrible thing to say. You can't say, well, I'm exhausted. But here, as I see it, it's just affirmed, period, end of story. So I hear the argument, but I'm not sure the record really tells us very much that as a matter of Oregon law, the Oregon courts haven't done anything to signal that there's been a procedural default. But are we supposed to reach out and decide for ourselves what is really going on behind the air curtain? All I can say to that is that the way that the Oregon appellate courts work is that if something has not been raised below, they generally cannot review it on appeal. There are certain exceptions. But wouldn't they say, if that's the case, wouldn't they say dismissed or denied instead of affirmed? And maybe they don't slice it that thin, but if they don't, I'm not sure how we can. Right. And usually what will happen, if this, for example, if the due process claim were the only issue that had been on appeal, and if the state had responded to the claim by saying it was unpreserved, and if the court issued an affirmance without opinion, it would still, I would argue, be very safe to say that it affirmed because it was unpreserved. In this particular case, there were a few other reasons, but it is arguable that had he preserved the due process claim, the court may have written about it. And again, I agree, we're trying to read something into an unreasoned decision, and I agree that that's difficult. But I do believe that because of the way, because of the fact that it's very clear that he didn't even bother to try and raise the federal due process claim before the board, that by not saying that at all and by understanding how the Oregon court's preservation rules work, that I think it is still fair to say that it was not fairly presented. And I do, so I understand that you find the argument. We all commend him. How about the merits? What is it that supports the board's decision here? The board concluded that Mr. Fisher was not, had not shown that he was likely to be rehabilitated within a reasonable time for a number of reasons, but significant to the board was the fact that he really had no insight into why he had committed his crime in the first place, that when asked about it, and the board's, the transcript of the hearing is in the excerpt of record, and it's a very interesting transcript because the board probed very deeply into what Mr. Fisher was thinking or why he thought he did what he did, and all Mr. Fisher could say was that he was in a bad marriage, that he wanted out of. He brutally raped and murdered a neighbor, and his only insight into why he might have done that was that he was in a bad marriage, and he wanted out of it. And the board probed with that, and he couldn't really give them anything more. So when the board asked him, well, what about your, you know, emotional and psychological well-being? What are you doing? Are you taking, are you in programs? Are you doing treatment? No, he didn't need to do that because he'd read some books, and he had figured out from some books what he should do, but, you know, anything else would have just been shoving stuff down his throat. That wouldn't have worked. And so the board was looking at this, and all he could really bring to the board was say, I'm 17 years older, and I've got some vocational skills, and I've done really well, and I had this one disciplinary report way back when, and when asked would he do exactly the same thing he'd done to get that disciplinary report in the first place, he said yes, he would have, which shows some failure in judgment. The board didn't really refer to that in its decision. But really, so, and I know, you know, there's this discussion about is it some evidence? Is it substantial evidence? Judge Clifton, I think you got it precisely right that if we're going to go with Hayward, the issue is was there substantial evidence in the record to support the board's conclusion that Petitioner had not met his burden by a preponderance of the evidence, and that's how it would work out. And the difference, you know, and I know there's this kind of tension between, well, what is that preponderance substantial? You know, preponderance, you're weighing the evidence. Was there more on one side or the other? Substantial evidence is really looking at could a reasonable person look at this record and reach the same conclusion? And it doesn't matter if another reasonable person could have reached a different conclusion. The only question is could a reasonable person have reached this conclusion? And so it's not really the same type of weighing that you would be having in a preponderance at the first level. And so we end up with the question of did the Petitioner prove by a preponderance of the evidence that he was likely to be rehabilitated in a reasonable time, and upon review, using what Hayward appears to be saying, and I will say none of us briefed at this. We were all kind of taken aback and thought, wow, this is a whole new world that none of us has briefed, but let's go. So assuming that. It's law school. You've just been given a law school exam, and you discover, gee, I thought I was taking classes. And I never did well on those. This is a contract exam. Hayward's been out for a while. You could have asked for a leave to file a supplemental brief. And I have to admit, in this case, we finished briefing in 2008, and I will have to admit that it was backburnered for a couple of years by me until we showed up. And so, yes, I could have submitted further briefing. But be that as it may, and I'm sorry. I'm just going to ask you, do you see a qualitative difference between what we said in Hayward about California, some evidence standard, and substantial evidence in Oregon? Not really. Substantial evidence is arguably a higher quantum of evidence than some evidence. But the way that the California some evidence standard was applied in Hayward and in the cases following, it actually seems to be more like the Oregon substantial evidence. And so, yes, I do see a qualitative difference. But, you know, however you slice it at this point, on this record, there was substantial evidence. All right. Thank you. I'll give you a minute to respond to anything. I could make one point, Your Honor, with respect to the procedural issue, and that is that as the record shows, not only was there a silent affirmance, and so, you know, the ruling in effect looks the same and appears to be the same as it was in Miller, but the way the appellate review of these decisions works in Oregon is that the Petitioner first, prior to the Court taking the case, files a motion for leave to proceed with judicial review, and Mr. Fisher did just that in ER 209, raising the due process issue specifically in 217, and then the Court grants the leave to proceed with judicial review. Is there any practice of the Oregon courts in parsing such an application or such a motion to say leave is granted with regard to these issues and not granted with regard to those issues? I don't know. I suspect it's a pretty perfunctory paper. So we're all grasping at straws, but it's hard for me to draw much significance to the fact they said granted if, in fact, there were some issues that are fairly permissibly brought to the Court. The only question here is whether the Federal due process was properly exhausted, and nobody seems within the Oregon court system has said anything to the outside world about that. So we're all in the same conundrum. And I primarily rely on the arguments in my brief as to the reasons the claim should be reviewed by this Court, and I will rely on my brief and prior argument on the merits. Thank you very much, Your Honor. Thank you.
judges: Burns, Paez, Clifton